

POOR QUALITY ORIGINAL



## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**MARK W. DOBRONSKI,**
an individual,

                Plaintiff,

v.

**MEDGUARD ALERT, INC.,**
a Connecticut corporation; and,

**DAVID GLEN ROMAN,**
an individual;

                Defendants.

Case: 2:24-cv-12940
Assigned To : Cox, Sean F.
Referral Judge: Altman, Kimberly G.
Assign. Date : 11/5/2024
Description: CMP MARK DOBRONSKI V
MEDGUARD ALERT INC ET AL (SS)

---

## **COMPLAINT**

NOW COMES the Plaintiff, MARK W. DOBRONSKI, appearing *in propria persona*, and for his complaint against the named Defendants alleges:

1.  This matter arises under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, *et seq.*, the Michigan Home Solicitation Sales Act ("MHSSA"), M.C.L. § 445.101, *et seq.*, and the Michigan Telephone Companies as Common Carriers Act ("MTCCCA"), M.C.L. § 484.101, *et seq.*

## **Parties**

2.  Plaintiff is an individual, of the age of majority, a citizen of the United States

1

of America, is a resident of and has a place of business in Orange County, Florida, has a residence and place of business in Washtenaw County, Michigan, and has a place of business in Wayne County, Michigan.

3.   Defendant MEDGUARD ALERT, INC. ("Medguard") is a corporation organized and existing under the laws of the state of Connecticut, with its principal office located at 1125 Middle Street, Middletown, Connecticut 06457.

4. Defendant DAVID GLEN ROMAN ("Roman") is an individual, is of the age of majority, is mentally competent, is not in the military service, and resides at 14 Pine Orchard Lane, Killingworth, Connecticut 06419-1150.

### Jurisdiction

5. This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

6.   This Court has limited personal jurisdiction over Defendant Medguard, pursuant to M.C.L. § 600.715, as a result of the defendant: transacting any business within the state; the doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort; and/or entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

7. This Court has limited personal jurisdiction over Defendant Roman, pursuant to M.C.L. § 600.705, as a result of the defendant: transacting any business within the state; the doing or causing any act to be done, or consequences to occur, in the state

2

resulting in an action for tort; and/or entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

## Venue

8.  Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), as the tortious or illegal telephone calls complained of herein were received in this judicial district.

## Preliminary Statement

9.  As the Supreme Court recently explained, "Americans passionately disagree amount many things.  But they are largely united in their disdain for robocalls." *Barr v. American Association of Political Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

10.  The Federal Government receives a staggering number of complaints about robocalls – 3.7 million complaints in 2019 alone. *Id.*

11.  In response to widespread public outrage over intrusive telemarketing calls to homes and businesses, the United States Congress acted to prevent persons, like Defendant, from invading American citizen's privacy and to prevent abusive "robo-calls" by enacting the TCPA.

12.  According to the Federal Communications Commission ("FCC"), "Unwanted calls and texts are the number one complaint to the FCC."

13.  In regard to such telephone solicitations, Senator Hollings of South

Carolina, the primary sponsor of the TCPA, explained:

> "Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall... these computerized telephone calls threaten our personal safety... These machines are out of control, and their use is growing by 30 percent every year.    It is telephone terrorism, and it has got to stop...."

*In the Matter of Rules and Regulations Implementing the TCPA,* 17 FCC Rcd. 17459, 17474, 2002 WL 31084939, at *10, fn. 90 (2002), quoting 137 Cong. Rec. 30,821-30,822 (Nov. 7, 1991).

14.  According to YouMail, Inc., a company which tracks robocall activity and publishes the YouMail Robocall Index, during calendar year 2023 alone, American consumers were bombarded with over 55.05 *billion* robocalls; an average of over 164 robocalls to each man, woman, and child. [Source: www.robocallindex.com ].

15.  In 2021, nearly 1 in 3 Americans say they have fallen victim to a phone scam in the past year, with reported losses to phone scams exceeding $29.8 Billion. [Source:   www.cndb.com/2021/06/29/americans-list-billions-of-dollars-to-phone-scams-over-the-past-year.html ].

16.  Congress has found that interstate telemarketing fraud has become a problem of such magnitude that the resources of the Government are not sufficient to ensure adequate consumer protection from such fraud.

17.  As a result, in enacting the TCPA, Congress intentionally created a legally

enforceable bounty system, not unlike *qui tam* statutes, to incentivize the assistance of

aggrieved private citizens to act as "private attorneys general" in enforcing federal law.

### Telephone Consumer Protection Act

18.  In 1991, Congress enacted the TCPA to restrict the use of sophisticated

telemarketing equipment that could target millions of consumers *en masse.*  Congress

found that these calls were not only a nuisance and invasion of privacy to consumers

specifically, but were also a threat to interstate commence generally.  *See* S. Rep. No.

102-178, at 2-3, 1991 U.S.C.C.A.N. 1968, 1969-71, 1991 WL 211220 (1991).

19.  The TCPA imposes restrictions on the use of automated telephone

equipment.  47 U.S.C. § 227(b)(1).

20.  Pursuant to authority delegated by Congress to the FCC under the TCPA

at 47 U.S.C. § 227(b)(2), the FCC has adopted regulations to implement the aforesaid

restrictions on use of automated telephone equipment. The TCPA implementing

regulations are promulgated at 47 C.F.R. 64.1200(a), *et seq.*

21.  As part of the restrictions on use of automated telephone equipment,

Congress created a private right of action for aggrieved persons to received $500.00

in damages for *each* violation of the subsection of the statute or the regulations

prescribed thereunder, which amount the court may treble if the court finds that the

defendant willfully or knowingly violated the statute or the regulations. 47 U.S.C. § 227(b)(3).

22.   Additionally, the Congress also sought to protect subscriber privacy rights, and directed the FCC to initiate a rulemaking proceeding to compare and evaluate alternative methods and procedures, and to develop proposed regulations to implement the methods and procedures that the FCC determines are most efficient to accomplish the need to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.   47 C.F.R. § 227(c)(1).   The FCC conducted such a rulemaking and implemented regulations to protect telephone subscribers' privacy rights.   See *In re Rules and Regulations Implementing the TCPA*, 68 FR 44144, 2003 WL 21713245 (July 25, 2003).   The regulations implemented by the FCC are promulgated at 47 C.F.R. § 64.1200©, *et seq.*, 47 C.F.R. § 64.1200(d), *et seq.*, and 47 C.F.R. § 64.1601(e).

23.   As part of the protection of subscriber privacy rights, Congress created a private right of action for aggrieved persons to receive $500.00 in damages for *each* violation of the subsection of the statute or the regulations prescribed thereunder, which amount the court may treble if the court finds that the defendant willfully or knowingly violated the statute or the regulations. 47 U.S.C. § 227(c)(5).

24.   The FCC has declared that telephone subscribers who have listed their

6

wireless telephone number on the national do-not-call list are deemed to be "residential subscribers". *In the Matter of Rules and Regulations Implementing the TCPA,* 18 FCC Rcd. 14014, 14039, 2003 WL 21517853, at *14, ¶ 36 (2003).

## Michigan Home Solicitation Sales Act

25. The Michigan Legislature has also enacted statutes governing and restricting telephone solicitors from making or causing to be made a telephone solicitation to a residential telephone subscriber. The restrictions include a prohibition on telephone solicitations using in whole or in part a recorded message. M.C.L. § 445.111(a)(1). A telephone solicitor shall not make a telephone solicitation to a residential telephone subscriber whose name and residential telephone number appears on the national do-not-call list. M.C.L. § 445.111(a)(4). Telephone solicitors must properly identify themselves and their organization. M.C.L. § 445.111b(1) and (2). Telephone solicitors may not block or otherwise interfere with the caller ID function of the telephone. M.C.L. § 445.111b(3). Further, telephone solicitors may not engage in specified unfair or deceptive acts or practices as set forth in the act. M.C.L. § 445.111c.

26. The MHSSA provides that a person who suffers a loss as a result of violation of the MHSSA may bring an action to recover actual damages or $250.00, together with reasonable attorney fees. M.C.L. 445.111c(3).

## Michigan Telephone Companies as Common Carriers Act

7

27. The Michigan Legislature has enacted statutes prohibiting callers from using a telephone line to contact a telephone subscriber in the state at the subscriber's residence, business, or toll-free telephone number for the purpose of presenting, delivering, or attempted to deliver commercial advertising except when the subscriber has voluntarily requested, consented, permitted, or authorized the contact from the caller. M.C.L. § 484.125(2).

28. The MTCCCA provides that a subscriber contacted by a caller in violation of the MTCCCA may bring an action to recover damages of $1,000.00, together with reasonable attorneys' fees. M.C.L. § 484.125(5).

## General Allegations

29. Plaintiff's residential and cellular telephone lines have been besieged with telemarketing calls hawking such things as alarm systems, Google listings, automobile warranties, health insurance, life insurance, credit cards, and even financial miracles from God. Some calls are blatant scams, including calls purportedly from the Social Security Administration, the U.S. Drug Enforcement Administration, and other government agencies, claiming that arrest warrants have been issued against Plaintiff for alleged drug trafficking and money laundering activities.

30. Plaintiff's residential telephone numbers are 734-***-2174, 734-***-2175, 734-***-2177, and 321-***-0911.

8

31.  Plaintiff's residential telephone numbers 734-***-2174, 734-***-2175, 734-***-2177, and 321-***-0911 are telephone numbers for which Plaintiff is charged on a per call and per minute basis.

32.  Plaintiff's telephone numbers 734-***-2174, 734-***-2175, 734-***-2177, and 321-***-0911 are listed on the National Do Not Call Registry maintained by the United States Federal Trade Commission pursuant to 16 C.F.R. Part 310 and have been so listed continuously since at least June 27, 2024; May 17, 2024; August 23, 2023; and, June 27, 2024, respectively, and at all times subsequent thereto and relevant hereto.

33.  By listing his telephone numbers on the National Do Not Call Registry, Plaintiff has given constructive notice to the World, including each and every one of the Defendants, that Plaintiff does not wish to receive telephone solicitations or robocalls at his telephone number.

34.  Courts are legally bound to give great deference to the FCC's interpretations of the TCPA and its own regulations.  See *FCC v. WNCN Listeners Guild*, 450 U.S. 582, 598, 101 S.Ct. 1266, 1276, 67 L.Ed.2d 521 (1981) ("the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong ...").

35.  The FCC has issued a declaratory ruling defining "called party" as "the

subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan." *In the Matter of Rules & Regulations Implementing the TCPA*, CG Docket No. 02–278, WC Docket No. 07–135, FCC 15–72, 2015 WL 4387780, at *26 ¶ 73 (FCC July 10, 2015).

36.  Plaintiff is the subscriber to and a customary user of the called telephone lines, is the one that was the actual recipient of the telephone calls at issue in this complaint, and suffered the nuisance and invasion of privacy of same. Thus, Plaintiff has standing to bring this action for alleged violations of TCPA's robocall provisions. See *Leyse v. Bank of America Nat. Ass'n*, 804 F.3d 316, 324 (3rd Cir. 2015).

37.  At no time relevant hereto has Plaintiff or any other authorized person requested, consented, permitted, or authorized the contact from the Defendants.

38.  At no time has Plaintiff provided permission to the Defendants to engage in telephone solicitation with the Plaintiff via telephone.

39.  At no time has Plaintiff provided "prior express consent" or "prior express written consent" (as those terms are defined under the TCPA and as interpreted by the FCC) for any of the Defendants or anyone acting on behalf of the Defendants to initiate any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or

prerecorded voice, to Plaintiff's residential telephone number.

40. At no time has Plaintiff had an "established business relationship" (as that term is defined under the TCPA and as interpreted by the FCC) with any of the Defendants.

41. The FCC has declared that a necessary element for a person to provide "consent" is that the person must knowingly and voluntarily provide the telephone number at which they are authorizing telemarketing calls to be received at. For example, capturing a caller's telephone number by a Caller ID or ANI device cannot be considered consent to receive telemarketing calls. *In the Matter of Rules and Regulations Implementing the TCPA*, 7 FCC Rcd. 8752, 8769, 1992 WL 690928, at *11, ¶ 31 (FCC, 1992).

42. Consent cannot be "presumed." The TCPA and the Commission's rules plainly require express consent, not implied or "presumed" consent. *In re Rules and Regulations Implementing the TCPA*, 30 FCC Rcd. 7961, 7991, 2015 WL 4387780, at *20, ¶ 52 (FCC, 2015).

43. The TCPA clearly requires that consumers 'opt in' before they can be contacted. *In re Rules and Regulations Implementing the TCPA*, 30 FCC Rcd. 7961, 8004, 2015 WL 4387780, at *29, ¶ 80 (FCC, 2015).

44. The FCC has declared that "[p]urporting to obtain consent during the call...

does not constitute the *prior* consent necessary to deliver the message in the first place as the request... is part of the telemarketing." *In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14019, 2003 WL 21517853, at *49, ¶ 142 (FCC, 2003) [Emphasis as in original].

45. The FCC has clarified that sellers may be held vicariously liable for violations of the TCPA by third-party telemarketers that initiate calls to market the seller's products or services, declaring as follows:

> "[A] company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call."

*In re Rules and Regulations Implementing the TCPA*, 20 FCC Rcd. 13664, 13667, 2005 WL 1981564, at *3, ¶ 7 (FCC, 2005).

46. A seller may be liable for violations by its representatives under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification. *In re Dish Network*, 28 FCC Rcd. 6574, 6584, 2013 WL 1934349, at *9, ¶ 28 (FCC, 2013).

47. When considering individual corporate officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See, e.g., Jackson Five Star Catering, Inc. v. Beason,* No. 10-

10010, 2013 WL 5966340, at *4 (E.D. Mich., Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participating in or personally authorized the conduct found to have violated the statute.") (internal citation omitted); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D.MD., 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

48. Pursuant to 47 U.S.C. § 217, the act, omission, or failure of any officer, agent, or other person acting for or employed by an common carrier or user, acting within the scope of his employment, shall in every case also be deemed to be the act, omission, or failure of such carrier or user as well as that of the person.

49. It is well settled under Michigan law that corporate employees and officials are personally liable for all tortious and criminal acts in which they participate, regardless of whether they are acting on their own behalf or on behalf of a corporation. A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent for the corporation and not on his own behalf.

50. Parties are acting in concert when they act in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result. The agreement need not be expressed in words or may be implied and understood to exist

from the conduct itself. Whenever two or more persons commit tortious acts in concert, each become subject to liability for the acts of the others, as well as for his own acts. In either case, the defendant's embrace of the actor's purpose or design—whether by agreement or by action—renders the defendant liable for the underlying tort.

51. The liability of coconspirators to civil damages is joint and several. All those who, in pursuance of a common plan to commit a tortious act actively take part in it and further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or who ratify and adopt the acts done for their benefit, are equally liable with him.

52. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of invasion of privacy and intrusion on Plaintiff's right of seclusion.

53. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of the occupation of the telephone line by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls, including emergency calls, when the telephone line was seized by Defendant's calls.

54. For each and every call alleged herein initiated to Plaintiff's telephone line, Defendants caused an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of

14

answering them. Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features on Plaintiff's telephone, which features are designed to inform the user of important missed communications.

55. Each and every call placed without consent by Defendants alleged herein to Plaintiff's telephone lines resulted in the injury of a trespass to Plaintiff's chattel, namely Plaintiff's telephone line and its telephone services.

56. For purposes of the TCPA, the FCC has defined "willfully or knowingly" to mean that the violator knew that he was doing the act in question, in this case, initiating a telephone solicitation, irrespective of any intent to violate the law. A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance.

## The Scheme

57. Defendant Medguard is engaged in the business of marketing a medical monitoring device and providing medical monitoring services, primarily to senior citizens, across the United States.

58. Medguard engages in deceptive marketing practices, preying upon senior citizens, in a form of elder abuse. Publicly posted complaints filed by consumers with the Better Business Bureau regarding Medguard repeat a common theme of elderly

consumers being tricked into purchasing the Medguard products and services.

59. Defendant Medguard utilizes telemarketing as a cost-effective method of soliciting consumers at large regarding the medical monitoring services offered by Medguard.

60. As part of its telemarketing practices, Defendant Medguard, either directly, or through third-party call centers, utilize automated telephone dialing systems to contact consumers *en masse* by dialing consumers' telephone numbers and determining whether a consumer is qualified for and interested in subscribing to Medguard's services.

61. The automated telephone dialing systems utilized by Defendant Medguard dial telephone numbers generated by a sequential or random number generator, and where a dialed number does not answer, stores that number and uses the random number generator to retrieve stored numbers to be called later.

62. A common characteristic of the use of an automatic telephone dialing system is a "click" or "boink" sound heard immediately after answering, followed by a delay, before a live telemarketer comes onto the line. The automated telephone dialing system will only connect a telemarketer after a consumer has answered, thereby reducing the number of live telemarketers that must be employed.

63. Another characteristic of the use of an automatic telephone dialing system

16

is that the caller identification numbers displayed when Medguard's automated telephone dialing system dials a consumer's telephone number are "spoofed" or manipulated to show a false telephone number.

64. In this case, a unique characteristic of an automatic telephone dialing system being utilized is evidenced by the fact that Plaintiff's residence has several successive-digit telephone numbers and Medguard managed to "cold call" three of the successive-digit telephone numbers over a two week period.

65. Further, Defendants do not scrub their outbound telephone lists against the National Do Not Call Registry, and thus indiscriminately call persons whose telephone numbers are so listed.

### Defendant Roman

66. Roman is the President of Medguard.

67. Roman directed the marketing activities of Medguard, including its telemarketing programs.

68. Roman was knowledgeable that Medguard's telemarketing activities were violative of the TCPA and related state consumer protection laws.

69. At all times, Roman had the ability to cease Medguard's TCPA-violative conduct, but took no action to curtail same.

### Willful and/or Knowing Conduct

17

70.   Medguard and Roman are no strangers to running afoul of telemarketing laws, as both are subject to a Stipulated Order for Permanent Injunction and Monetary Judgment entered on July 1, 2019 by the United States District Court for the Northern District of Illinois in the matter of *Federal Trade Commission v. Lifewatch, Inc., et al.,* Case No. 15-cv-5781, permanently banning Medguard and Roman from, *inter alia*: initiating outbound telephone calls that play or deliver a prerecorded message; initiating any outbound telephone call to any telephone number listed on the National Do Not Call Registry; initiating any outbound telephone call that fails to transmit caller identification information; and, from engaging in abusive telemarketing practices.  A copy of the Permanent Injunction is attached hereto at EXHIBIT 1.

71.   Medguard and Roman's conduct in this matter appears to be additionally in violation of the Permanent Injunction.

## Call 1

72.  On the following dates and times, Defendants or Defendants' agent initiated telemarketing calls to Plaintiff's residential telephone number 734-***-2177 using an automatic telephone dialing system and/or a prerecorded voice message:

| Call | Date | Time | Note |
|------|------|------|------|
| 1 | 05/08/2023 | 1:56 P.M. | # @ |
| 2 | 05/16/2023 | 6:16 P.M. | & |
| 3 | 05/26/2023 | 12:47 P.M. | # |
| 4 | 05/26/2023 | 4:24 P.M. | # |
| 5 | 05/26/2023 | 4:25 P.M. | # |

18

| 6  | 05/30/2023 | 1:39 P.M.  | #    |
|----|------------|------------|------|
| 7  | 05/30/2023 | 1:40 P.M.  | &    |
| 8  | 05/31/2023 | 11:02 A.M. | &    |
| 9  | 06/02/2022 | 11:37 A.M. | #    |
| 10 | 06/02/2023 | 12:21 P.M. | #    |
| 11 | 06/02/2023 | 12:22 P.M. | #    |
| 12 | 06/02/2023 | 12:23 P.M. | #    |
| 13 | 06/02/2023 | 12:24 P.M. | #    |
| 14 | 06/02/2023 | 12:50 P.M. | # @  |
| 15 | 06/02/2023 | 5:56 P.M.  | #    |
| 16 | 06/02/2023 | 5:57 P.M.  | #    |
| 17 | 06/02/2023 | 5:58 P.M.  | #    |
| 18 | 06/02/2023 | 6:00 P.M.  | #    |
| 19 | 06/02/2023 | 6:08 P.M.  | #    |
| 20 | 06/09/2023 | 11:31 A.M. | #    |
| 21 | 06/20/2023 | 1:50 P.M.  | #    |
| 22 | 06/20/2023 | 1:51 P.M.  | #    |

Notes:      (#) Upon answering call, call terminated.
            (@) Call terminated at less than 15 seconds or 4 rings.
            (&) Additional details alleged, *infra*.

73.   Upon Plaintiff answering Calls 2 and 7, the caller identified herself as being with Safeguard Alert and then the call suddenly terminated.

74.   Upon Plaintiff answering Call 8, the caller identified herself as being with Safeguard Alert and began pitching a medical alert bracelet system. Plaintiff asked the caller to provide a callback number for Safeguard Alert, but refused. Plaintiff asked for an address for Safeguard Alert, but refused. Plaintiff asked the telemarketer to place his telephone number on Safeguard Alert's do-not-call list; the telemarketer uttered a profanity and hung up on Plaintiff.

75.  It is apparent that Calls 9 through 19, which all were "hang up" calls received on June 2, 2023, were in retaliation for Plaintiff having made a do not call demand during Call 8.

76.  On several occasions, Plaintiff dialed the caller identification number displayed (859-337-0366) to make a do-not-call demand.  On several occasions, Plaintiff received a recorded message saying "Thank you for calling Safeguard Alert" and then the call would terminate.  On other occasions, the line would simply ring and go unanswered.

**Confrontation Call**

77.  On June 22, 2023, at approximately 10:39 A.M., for purposes of better identifying the person or persons responsible for initiating Calls 1 through 23, *supra*, Plaintiff initiated a telephone call to the caller identification number displayed (859-337-0366).  The call was answered by a telemarketer identifying as "Safeguard Alert" and began to pre-qualify Plaintiff for a medical alert bracelet system.  Plaintiff was then transferred to a telemarketer who identified himself as David Galban with Medguard Alert.  Galban stated that he was in Middletown, Connecticut and provided a callback telephone number of 800-716-1433.  Plaintiff feigned interest in the product and provided Galban with a controlled credit card number.

78.  On June 22, 2023, at 10:52 A.M., Plaintiff's financial institution logged a

credit card charge transaction against the credit card number provided by Plaintiff to Galban in the amount of $44.95 from a merchant by the name of Medguard Alert.

79. Immediately after the termination of the telephone call, on June 22, 2023, at approximately 11:13 A.M., Plaintiff dialed the callback number provided by Galban (800-716-1433). The call was answered by a recorded message stating "Thank you for calling Medguard Alert." The call was then connected to a live telemarketer who identified herself as Carrie Ann. Plaintiff confronted Carrie Ann regarding the numerous telephone calls Plaintiff was receiving from telephone number 859-337-0366. Carrie Ann stated that they do not make any outbound calls. Plaintiff made a do not call demand, to which Carrie Ann responded that Plaintiff would have to call back on Monday.

## Call 23

80. On August 26, 2024, at approximately 3:02 P.M., Defendants or Defendants' agent initiated a telemarketing call to Plaintiff's residential telephone line 734-***-2175.

81. The caller identification number displayed was 810-366-1845, with no caller identification name information displayed.

82. Upon answering the call, Plaintiff heard a "boink" sound, followed by 3-4 seconds of silence, followed by a live telemarketer identifying himself as "Jonathon"

with "Safeguard Alert."

83.  Jonathan began pitching an emergency alert system for $44.95.  In order to better identify the caller, Plaintiff feigned interest.  Jonathan sought personal identifying information.  Plaintiff provided a false name of Robert Flanagan.

84.  The call was then transferred to another telemarketer, who also identified himself as being Jonathan with Safeguard Alert, stating that he was the supervisor.

85.  The call was then transferred once again.  This time, a recorded message stating "Thank you for calling Medguard Alert" was heard.  A live telemarketer came onto the line and identified himself as Tommy.  Tommy confirmed the personal identifying information for Plaintiff and Plaintiff's wife.  Plaintiff provided a false name for his wife as Claudia Flanagan.  Tommy also requested an emergency contact telephone number in case of a medical emergency involving Plaintiff's wife; Plaintiff provided the telephone number 734-***-2174.  Lastly, Tommy sought  credit card information from Plaintiff.  Plaintiff provided a controlled credit card number.  Tommy informed Plaintiff that the credit card transaction had been declined.  Plaintiff informed Tommy that Plaintiff would contact Tommy after Plaintiff had spoken with his bank. The call terminated.

86.  On August 26, 2024, at 3:29 P.M., Plaintiff's financial institution reported a auto-declined charge transaction in the amount of $49.96 from a merchant by the

name of Medguard Alert, followed by a second attempted charge transaction on the same date at 3:38 P.M. in the amount of $49.95 from a merchant by the name of Medguard Alert.

87.    Immediately after the termination of the call, Plaintiff dialed the caller identification number displayed (810-366-1845) to make a do-not-call demand.  The call rang once and then went to a reorder signal.

## Call 24

88.    On August 27, 202, at approximately 4:28 P.M., Defendants or Defendants' agent, initiated a telemarketing call to Plaintiff's residential telephone number 734-***-2174.

89.    The caller identification number displayed was 860-431-8766, with no caller identification name information displayed.

90.    Upon answering the incoming call, Plaintiff heard a clock sound, then approximately 3 to 4 seconds of silence, followed by a female stating "Is Claudia available?"  The caller did not immediately identify by name or business affiliation.

91.    Plaintiff sought more information from the caller.  The caller finally identified herself as Flavia with Medguard Alert, located in Connecticut.  Flavia would not provide a surname.

92.    Plaintiff confronted Flavia over the numerous unwanted telemarketing calls

Plaintiff had been receiving from Safeguard Alert and Medguard Alert. Flavia stated that "Safegusrd Alert... they sell our product." Plaintiff sought the identity and contact information for Safeguard Alert, which Flavia stated that Plaintiff "did not need to know.... "

93. Plaintiff made demand to Flavia to be provided a copy of their written do-not-call policy. Flavia stated that they do not have one.

94. Plaintiff asked to be placed on their do not call list. Flavia stated that they do not have one.

95. After the termination of the call, Plaintiff dialed back the caller identification number displayed (860-431-8766) and received a recorded message stating "Thank you for calling Medguard Alert."

## Call 25

96. On September 10, 2024, at approximately 1:19 P.M., Defendants or Defendants' agent initiated a telemarketing call to Plaintiff's residential telephone number 734-***-2177.

97. The caller identification number information displayed was 734-768-2548, with no caller identification name information.

98. Upon answering the income call, Plaintiff noted a click sound followed by approximately 3 seconds of silence, followed by a male telemarketer identifying

24

himself as Jack from Medical Alert System calling regarding a FREE medical alert device.

99. Jack asked pre-qualifying questions of Plaintiff. Plaintiff feigned interest in the product and provided a false name of David Sawyer.

100. The call was then transferred to an individual who identified himself as Danny the senior supervisor. Danny then verified Plaintiff's personal information and then transferred the call again.

101. The call was now answered by a recorded message stating "Thank you for your interest in Medguard Alert... you have reached the verification department... please hold for the next available representative."

102. A telemarketer then came on the line and identified himself as "Jay" with Medguard Alert. Jay verified the personal information which Plaintiff had provided and then sought Plaintiff's credit card number. Plaintiff provided a controlled credit card number to Jay. Jay provided a callback telephone number of 800-716-1433.

103. On September 10, 2024, at 1:45 P.M., Plaintiff's financial institution logged a credit card transaction in the amount of $49.95 with the merchant being Medguard Alert.

104. Immediately after the termination of the call, Plaintiff dialed the caller information number displayed (734-768-2548) to make a do-not-call demand but

received a recorded message that the telephone number was disconnected.

## COUNT I
## VIOLATION OF THE TCPA - AUTOMATED CALL

105. Plaintiff incorporates the allegations of paragraphs 1 through 104, *supra.*

106. Each of Calls 1 through 25, *supra*, were in violation of the TCPA regulations, specifically 47 C.F.R. § 64.1200(a)(2), as Defendants or Defendants' agent initiated a telephone call to a telephone number for which the called party is charged for a call using an that includes telemarketing using an automatic telephone dialing system or a prerecorded voice to deliver a message without the prior express written consent of the called party.

## COUNT II
## VIOLATION OF THE TCPA -DEAD AIR CALL

107. Plaintiff incorporates the allegations of paragraphs 1 through 104, *supra.*

108. Each of Calls 1 and 14, *supra*, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(a)(6), as Defendants initiated telemarketing calls and then disconnected the calls prior to at least 15 second or four rings.

## COUNT III
## VIOLATION OF THE TCPA - ABANDONED CALL

109. Plaintiff incorporates the allegations of paragraphs 1 through 104, *supra.*

110. Each of Calls 1, 3 through 6, and 9 through 25, *supra*, were in violation

of the TCPA regulations, specifically 47 C.F.R. § 64.1200(a)(7), as Defendants or Defendants' agent initiated a telephone call to Plaintiff's telephone line and a live sales representative was not available and did not speak to Plaintiff within two (2) seconds after the called person's completed greeting.

111.  Given the fact that nearly 88 percent of the calls alleged in this complaint experienced a failure of a live sales representative being available to speak within two seconds after the called person's completed greeting, it is reasonable to infer that, overall, seller abandons more than three percent of all telemarketing calls that are answered live by a person.

**COUNT IV**
**VIOLATION OF THE TCPA - NO DISCLOSURE**

112.  Plaintiff incorporates the allegations of paragraphs 1 through 104, *supra.*

113.  Each of Calls 1, 3 through 6, and 9 through 25, *supra*, were in violation of the TCPA regulations, specifically 47 C.F.R. § 64.1200(a)(7)(i)(A), as Defendants or Defendants' agent initiated a telephone call to Plaintiff's telephone line and a live sales representative was not available and did not speak to Plaintiff within two (2) seconds after the called person's completed greeting and did not provide a prerecorded identification disclosing that the call was for "telemarketing purposes" and state the name of the business entity, and a telephone number for such business entity that permits the called person to make a do-not-call request during regular business hours.

## COUNT V
## VIOLATION OF THE TCPA - NO AUTOMATED OPT-OUT

166.  Plaintiff incorporates the allegations of paragraphs 1 through 154, *supra.*

167.  Each of Calls 1, 3 through 6, and 9 through 25, *supra*, were in violation of the TCPA regulations, specifically 47 C.F.R. § 64.1200(a)(7)(i)(B), as Defendants or Defendants' agent initiated a telephone call to Plaintiff's telephone line and a live sales representative was not available and did not speak to Plaintiff within two (2) seconds after the called person's completed greeting and did not provide an automated, interactive voice- and/or key press-activated opt-out mechanism that enables the called person to make a do-not-call request prior to terminating the call.

168.  The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

## COUNT VI
## VIOLATION OF THE TCPA - DO NOT CALL

169.  Plaintiff incorporates the allegations of paragraphs 1 through 154, *supra.*

170.  Each of Calls 2 through 25, *supra*, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(c)(2), as Defendants or Defendants' agent initiated a telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to received telephone solicitations that is maintained by the

Federal Government.

## COUNT VII
## VIOLATION OF THE TCPA - NO DNC POLICY

171.   Plaintiff incorporates the allegations of paragraphs 1 through 154, *supra.*

172.   Each of Calls 1 through 25*, supra*, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(d), as Defendants initiated calls for telemarketing purposes to a residential telephone subscriber has failed to initiate procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity.

173.   The fact that Defendants failed to have such written procedures was evident during calls where Plaintiff asked for a copy of the policy or made a do not call request and was cursed at and abruptly hung up upon, and where the telemarketer admitted that they do not have such a policy.

## COUNT VIII
## VIOLATION OF THE TCPA - DNC POLICY NOT PROVIDED

174.   Plaintiff incorporates the allegations of paragraphs 1 through 154, *supra.*

175.   Call 12, *supra*, was in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(d)(1), as Defendants failed to provide a copy of Defendants' written policy in response to a demand for same made by Plaintiff.

## COUNT IX
## VIOLATION OF THE TCPA - FAILURE TO LOG DNC REQUEST

176.  Plaintiff incorporates the allegations of paragraphs 1 through 154, *supra*.

177.  Each of Calls 9 through 22, and 25, *supra*, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(d)(3), as Defendants failed to honor the do not call demand made during Call 8.

## COUNT X
## VIOLATION OF THE TCPA -FAILURE TO IDENTIFY

178.  Plaintiff incorporates the allegations of paragraphs 1 through 154, *supra*.

180.   Each of Calls 1 through 25, *supra*, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(d)(4), as Defendants made calls for telemarketing purposes but failed to provide the complete name of the individual caller, the name of the business or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted.

## COUNT XI
## VIOLATION OF THE TCPA - INVALID CALLER ID

181.  Plaintiff incorporates the allegations of paragraphs 1 through 154, *supra*.

182.  Each of Calls 1 through 23, and 25, *supra*, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1601(e), as Defendants initiated calls and failed to provide a caller identification number which would permit any individual to make a do-not-call request during regular business hours.

## COUNT XII
## VIOLATION OF THE MHSSA

183. Plaintiff incorporates the allegations of paragraphs 1 through 154, *supra.*

184. Each of Calls 1 through 23, and 25, *supra*, were in violation of the MHSSA, specifically: M.C.L. § 445.111a(5), as Defendants or Defendants' agent made a telephone solicitation to a residential telephone subscriber whose residential telephone number is on the federal do-not-call list; and/or M.C.L. § 445.111b(3), as Defendants or Defendants' agent intentionally blocked or otherwise interfered with the caller ID function on the telephone so that the telephone number of the caller is not displayed on the telephone of the residential telephone subscriber; and/or M.C.L. 445.111c(1)(g), as Defendants or Defendants' agent make a telephone solicitation to a consumer in this state who had requested that he or she not receive calls from the organization on whose behalf the telephone solicitation is made.

## COUNT XIII
## VIOLATION OF THE MTCCCA

185. Plaintiff incorporates the allegations of paragraphs 1 through 154, *supra.*

186. Each of Calls 23 and 25, *supra*, were in violation of the MTCCCA, specifically M.C.L. 484.125(2)(b), as the caller delivered or attempted to deliver intrastate commercial advertising to the called party having activated a feature to block the display of caller identification information that would otherwise be available to the

31

called party.

## PRAYER FOR RELIEF

WHEREFORE, the aforesaid premises considered, Plaintiff prays that this Court enter a judgment for Plaintiff and against the Defendants, jointly and severally, as follows:

A.   Damages:

    I.   Damages for violations of the TCPA alleged:

| Count | Violations |
|-------|-----------|
| I | 25 |
| II | 2 |
| III | 22 |
| IV | 22 |
| V | 22 |
| VI | 24 |
| VII | 25 |
| VIII | 7 |
| IX | 15 |
| X | 25 |
| XI | 24 |

A total of 213 violations at $500.00 per violation for damages of $106,500, which amount shall be trebled because the violations were willful and/or knowing, for total damages of $319,500.00.

    ii.   Damages for violations of the MHSSA alleged at Count XII: 24 violations at $250.00 per violation, for damages of $6,000.00.

    iii.   Damages for violations of the MTCCCA alleged at Count XIII: 2

violations at $1,000.00 per violation, for damages of $2,000.00.

The cumulative total amount of damages claimed in this action is $327,500.00, and in the event of default judgment is the sum certain damages amount that will be sought.

B.  An award of Plaintiff's taxable costs and disbursements incurred in the filing and prosecution of this action;

C.  An injunction enjoining Defendants from initiating any telephone calls to Plaintiff's telephone lines.

D.  Interest accruing from the date of filing until paid at the statutory rate; and,

E.  Such other and further relief as this Court deems necessary, reasonable, prudent and proper under the circumstances.

Respectfully submitted,

Dated: October 31, 2024

_____

Mark W. Dobronski
Post Office Box 99
Dexter, Michigan 48130-0099
(734) 641-2300
markdobronski@yahoo.com
Plaintiff *In Propria Persona*

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, and | Case No. 15cv5781 |
| STATE OF FLORIDA, OFFICE OF THE ATTORNEY GENERAL, DEPARTMENT OF LEGAL AFFAIRS, | Judge Feinerman |
| Plaintiffs, | Magistrate Judge Gilbert |
| v. | |
| LIFEWATCH INC., a New York corporation, also d/b/a LIFEWATCH USA and MEDICAL ALARM SYSTEMS; | |
| SAFE HOME SECURITY, INC., a limited liability a Connecticut corporation; | |
| MEDGUARD ALERT, INC., a Connecticut corporation; | |
| EVAN SIRLIN, individually and as an officer or manager of Lifewatch, Inc., | |
| MITCHEL MAY, individually and as an officer or manager of Lifewatch, Inc., and | |
| DAVID ROMAN, individually and as an officer or manager of Lifewatch Inc., Safe Home Security, Inc., and MedGuard Alert, Inc., | |
| Defendants. | |

**STIPULATED ORDER FOR PERMANENT INJUNCTION**
**AND MONETARY JUDGMENT**

Plaintiffs, the Federal Trade Commission ("FTC" or "Commission") and State of Florida,

Office of the Attorney General, Department of Legal Affairs ("Florida Attorney General"), filed

Page 1 of 27

Case 1:15-cv-05781 Document #: 422-1 Filed: 06/24/19 Page 2 of 29 PageID #:16759

their Complaint for Permanent Injunction and Other Equitable Relief, subsequently amended as

Amended Complaint for Permanent Injunction and Other Equitable Relief ("Complaint"),

pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C.

§§ 53(b) and 57b, the Telemarketing and Consumer Fraud and Abuse Prevention Act

("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, and the Florida Deceptive and Unfair Trade

Practices Act ("FDUTPA"), Chapter 501, Part II, Florida Statutes (2018).   Plaintiffs and

Defendants stipulate to the entry of this Stipulated Order for Permanent Injunction and Other

Equitable Relief ("Order") to resolve all matters in dispute in this action between them, and, it is

therefore **ORDERED** as follows:

## FINDINGS

1.      This Court has jurisdiction over this matter.

2.      The Complaint charges that Defendants participated in abusive and deceptive acts and

practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, various provisions of the

Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, and Section 501.204 of the Florida

Deceptive and Unfair Trade Practices Act, Chapter 501, Part II, Florida Statutes, in the course of

telemarketing their medical alert systems.

3.      Defendants neither admit nor deny any of the allegations in the Complaint, except as

specifically stated in this Order.   Only for purposes of this action, Defendants admit the facts

necessary to establish jurisdiction.

4.      Defendants waive any claim that they may have under the Equal Access to Justice Act, 28

U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree

to bear their own costs and attorney fees.

5.     Defendants waive all rights to appeal or otherwise challenge or contest the validity of this Order.

<b>DEFINITIONS</b>

For the purpose of this Order, the following definitions apply:

A.     **"Defendants"** means all of the Individual Defendants and the Corporate Defendants, individually, collectively, or in any combination.

B.     **"Corporate Defendants"** means Lifewatch, Inc., also d/b/a Lifewatch USA and Medical Alarm Systems, Safe Home Security, Inc., and MedGuard Alert, Inc., and their successors and assigns.

C.     **"Individual Defendants"** means Evan Sirlin, Mitchel May, and David Roman.

D.     **"Lifewatch Defendants"** means Lifewatch, Inc., also d/b/a Lifewatch USA and Medical Alarm Systems, and its successors and assigns; Evan Sirlin; and Mitchel May.

E.     **"Roman Defendants"** means Safe Home Security Inc. and MedGuard Alert, Inc, their successors and assigns, and David Roman.

F.     **"Caller Identification Service"** means a service that allows a telephone subscriber to have the telephone number, and, where available the name of the calling party transmitted contemporaneously with the telephone call, and displayed on a device in or connected to the subscriber's telephone.

G.     **"Entity-Specific Do Not Call List"** means a list of telephone numbers maintained by a Seller or Telemarketer of persons who have previously stated that they do not wish to receive Outbound Telephone Calls made by or on behalf of the Seller or Telemarketer.

H.     **"Established Business Relationship"** means a relationship between a Seller and a person

Page 3 of 27

based on: (a) the person's purchase, rental, or lease of the Seller's goods or services or a financial transaction between the Seller and person, within the eighteen months immediately preceding the date of the Telemarketing call; or (b) the person's inquiry or application regarding a product or service offered by the Seller, within the three months immediately preceding the date of a Telemarketing call.

I.      **"National Do Not Call Registry"** means the "do-not-call" registry of telephone numbers maintained by the Commission pursuant to 16 C.F.R. § 310.4(b)(1)(iii)(B).

J.      **"Outbound Telephone Call"** means a telephone call initiated by a Telemarketer to induce the purchase of goods or services or to solicit a charitable contribution.

K.      **"Seller"** means any person who, in connection with a Telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration, whether or not such person is under the jurisdiction of the Commission.

L.      **"Telemarketer"** means any person who, in connection with Telemarketing, initiates or receives telephone calls to or from a customer or donor, whether or not such person is under the jurisdiction of the Commission.

M.      **"Telemarketing"** means any plan, program, or campaign which is conducted to induce the purchase of goods or services by use of one or more telephones, and which involves a telephone call, whether or not covered by the Telemarketing Sales Rule.

N.      **"PERS Account"** means a customer commitment, made prior to the entry of this Order and not canceled or otherwise terminated as of the entry of this Order, to pay any Defendant or any entity owned by any Defendant, on an ongoing basis, for Personal Emergency Response

System, also known as a medical alert system, services.

## ORDER

### I.   BAN ON TELEMARKETING

IT IS ORDERED that the Lifewatch Defendants are permanently restrained and enjoined from participating in Telemarketing, whether directly or through an intermediary.

### II.   BAN ON ROBOCALLING

IT IS FURTHER ORDERED that the Roman Defendants, whether acting directly or indirectly, are permanently restrained and enjoined from initiating, causing others to initiate, or assisting others in initiating any Outbound Telephone Call that plays or delivers a prerecorded message.

### III.   BAN ON CALLING TELEPHONE NUMBERS LISTED ON THE NATIONAL DO NOT CALL REGISTRY

IT IS FURTHER ORDERED that the Roman Defendants, whether acting directly or indirectly, are permanently restrained and enjoined from initiating, causing others to initiate, or assisting others in initiating any Outbound Telephone Call to any telephone number listed on the National Do Not Call Registry more than thirty one (31) days after the date on which such number is added to the National Do Not Call Registry, unless the Roman Defendants prove that they have an Established Business Relationship with the consumer who owns that telephone number.

### IV.   BAN ON CALLING A PERSON ON AN ENTITY-SPECIFIC DO NOT CALL LIST

IT IS FURTHER ORDERED that the Roman Defendants, whether acting directly or

Case 2:24-cv-12940-LVP-KGA  ECF No. 1, PageID.40  Filed 11/05/24  Page 40 of 67

Case 1:15-cv-05781 Document #: 424 Filed: 07/01/19 Page 6 of 28 PageID #:16788
Case 1:15-cv-05781 Document #: 422-1 Filed: 06/24/19 Page 6 of 29 PageID #:16763

indirectly, are permanently restrained and enjoined from initiating, causing others to initiate, or assisting others in initiating any Outbound Telephone Call to any person who has previously stated that he or she does not wish to receive an Outbound Telephone Call made by or on behalf of the Seller whose goods or services are being offered, more than thirty one (31) days after the date on which such number is added to the National Do Not Call Registry.

## V.     BAN ON ABUSIVE CALLER ID PRACTICES

IT IS FURTHER ORDERED that the Roman Defendants, whether acting directly or indirectly, are permanently restrained and enjoined from initiating, causing others to initiate, or assisting others in initiating any Outbound Telephone Call that fails to transmit or causes to be transmitted to any Caller Identification Service in use by a recipient of a Telemarketing call either: (i) the telephone number and, when made available by the Telemarketer's carrier, the name of the Telemarketer making the call; or (ii) the Seller's name and customer service telephone number.

## VI.    PROHIBITION AGAINST ABUSIVE TELEMARKETING PRACTICES

IT IS FURTHER ORDERED that the Roman Defendants, whether acting directly or indirectly, are permanently restrained and enjoined from engaging in, causing others to engage in, or assisting others engaging in, any of the following practices:

A.     Failing to disclose in an Outbound Telephone Call truthfully, promptly, and in a clear and conspicuous manner: (1) the identity of the Seller; (2) that the purpose of the call is to sell goods or services; and (3) the nature of the goods or services; or

B.     Violating the Telemarketing Sales Rule, 16 C.F.R. Part 310 (attached as Appendix A).

Case 1:15-cv-05781 Document #: 434 Filed: 07/01/19 Page 7 of 29 PageID #:16788
Case: 1:15-cv-05781 Document #: 422-1 Filed: 06/24/19 Page 7 of 29 PageID #:16764

## VII. PROHIBITION AGAINST MISREPRESENTATIONS

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with advertising, marketing, promoting, or offering for sale any good or service, are permanently restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication:

A.      That a friend, family member, health care provider, or other acquaintance has referred the consumer for the good or service, or has purchased the good or service for the consumer;

B.      That the good or service is endorsed by any organization or agency;

C.      When a consumer will be charged for the good or service;

D.      That consumers may cancel an order for the good or service at any time without any further financial obligation; and

E.      Any other fact material to consumers concerning any good or service, such as: the total costs; any material restrictions, limitations, or conditions; or any material aspect of its performance, efficacy, nature, or central characteristics.

## VIII.  MONITORING OF TELEMARKETERS

IT IS FURTHER ORDERED that the Roman Defendants, whether acting directly or indirectly, are hereby permanently restrained and enjoined from:

A.      Failing to conduct a due diligence investigation of a Telemarketer before authorizing the Telemarketer to solicit customers for any Roman Defendant, to ensure that the Telemarketer has established and actively enforces effective policies and procedures for compliance with the

Case 1:15-cv-05781-DGL Document #: 434-1 Filed: 07/01/19 Page 8 of 29 PageID #:16788
Case: 1:15-cv-05781 Document #: 422-1 Filed: 06/24/19 Page 8 of 29 PageID #:16765

Telemarketing Sales Rule, 16 C.F.R. Part 310 (attached as Appendix A), including procedures to prevent the acts and practices described in Sections II through VII of this Order;

B.      The investigation described in Subsection A above must include steps reasonably calculated to determine whether a Telemarketer: (1) complies with the Telemarketing Sales Rule, 16 C.F.R. Part 310 (attached as Appendix A), and (2) engages in any acts or practices described in Sections II through VII of this Order.   Such steps may include obtaining and evaluating the Telemarketer's policies and procedures, reviewing any prior law enforcement or telemarketing-related legal proceeding filed against the Telemarketer, evaluating consumer reviews and complaints regarding the Telemarketer, and reviewing the Telemarketer's proposed sales' scripts, among other reasonable steps;

C.      The Roman Defendants shall not enter into any business relationship with a Telemarketer if the investigation described in Subsection A above or any other evidence the Roman Defendants obtain reveals that the Telemarketer: (1) does not comply or has not complied with the Telemarketing Sales Rule, 16 C.F.R. Part 310 (attached as Appendix A), or (2) engages in or engaged in any acts or practices described in Sections II through VII of this Order;

D.      Failing to have a written contract with each Telemarketer;

E.      Failing to include in the written contract with each Telemarketer a requirement that the Telemarketer comply with all provisions of the Telemarketing Sales Rule, 16 C.F.R. Part 310 (attached as Appendix A);

F.      Failing to monitor Telemarketing campaigns conducted by any Telemarketer on behalf of any Roman Defendant to determine whether such Telemarketer is: (1) complying with the Telemarketing Sales Rule, 16 C.F.R. Part 310 (attached as Appendix A), or (2) engaging in acts

or practices described in Section II through VII of this Order;

G.      The monitoring described in Subsection F above, must include steps reasonably calculated to determine whether a Telemarketer: (1) complies with the Telemarketing Sales Rule, 16 C.F.R. Part 310 (attached as Appendix A), and (2) engages in any acts or practices described in Sections II through VII of this Order.   Such steps may include obtaining and reading the Telemarketer's sales scripts, obtaining and listening to audio, video, or other recordings of randomly selected interactions between the Telemarketer and consumers, evaluating consumer reviews and complaints regarding the Telemarketer, obtaining and evaluating the Telemarketer's policies and procedures, reviewing any prior law enforcement or telemarketing-related legal proceeding filed against the Telemarketer, among other reasonable steps;

H.      The Roman Defendants shall immediately terminate any business relationship with a Telemarketer if this monitoring or any other evidence the Roman Defendants obtain reveals that the Telemarketer: (1) does not comply or has not complied with the Telemarketing Sales Rule, 16 C.F.R. Part 310 (attached as Appendix A), or (2) engages in or engaged in any acts or practices described in Sections II through VII of this Order;

I.      Providing any monetary compensation for any Telemarketing, including, but not limited to, advances, hourly rates of pay, spiffs, or commissions, to any Telemarketer after the Roman Defendants know or should have known that such Telemarketer has, in connection with Telemarketing the Roman Defendants' goods or services:

     1.      Failed to fulfill contract requirements with respect to compliance with the Telemarketing Sales Rule, 16 C.F.R. Part 310 (attached as Appendix A); or

     2.      Violated the Telemarketing Sales Rule, 16 C.F.R. Part 310 (attached as Appendix

Page 9 of 27

A);

J.      Continuing to do business with any Telemarketer that fails to fulfill contract requirements with respect to compliance with the Telemarketing Sales Rule, 16 C.F.R. Part 310 (attached as Appendix A) or violates any provision of the Telemarketing Sales Rule; and

K.      Defendants shall create and maintain records of their reviews and investigations of Telemarketers, and any terminations of Telemarketers, including documentation of the review process, procedures, and implementation, status and outcome. These records shall be maintained pursuant to Section XIV of this Order.

## IX.  MONETARY JUDGMENT

IT IS FURTHER ORDERED that:

A.      Judgment in the amount of Twenty Five Million, Two Hundred Sixty Six Thousand, Eight Hundred Eighty Six Dollars ($25,266,886) is entered in favor of Plaintiffs against Defendant Lifewatch, Inc.

B.      Judgment in the amount of Twenty Five Million, Two Hundred Sixty Six Thousand, Eight Hundred Eighty Six Dollars ($25,266,886) is entered in favor of Plaintiffs against Defendant Evan Sirlin.

C.      Judgment in the amount of Eight Million, Nine Hundred Forty Three Thousand, Four Hundred Sixteen Dollars ($8,943,416) is entered in favor of Plaintiffs against Defendant Safe Home Security, Inc.

D.      Judgment in the amount of Eight Million, Nine Hundred Forty Three Thousand, Four Hundred Sixteen Dollars ($8,943,416) is entered in favor of Plaintiffs against Defendant MedGuard Alert, Inc.

Case: 1:15-cv-08781 Document #: 422-1 Filed: 06/24/16 Page 11 of 29 PageID #:16788

E.      Judgment in the amount of Eight Million, Nine Hundred Forty Three Thousand, Four Hundred Sixteen Dollars ($8,943,416) is entered in favor of Plaintiffs against Defendant David Roman.

F.      Judgment in the amount of Eight Million, Nine Hundred Forty Three Thousand, Four Hundred Sixteen Dollars ($8,943,416) is entered in favor of Plaintiffs against Defendant Mitchel May as equitable monetary relief.

G.      Defendants are ordered to pay to the Commission the judgment set forth above in Subsection IX.A as follows:

1.      Within seven (7) days of entry of this Order, Defendants shall wire by electronic fund transfer the sum of Five Hundred Thousand Dollars ($500,000), to the Commission, which, as Defendants stipulate, their undersigned counsel holds in escrow for no purpose other than payment to the Commission.   Defendants shall wire these funds to Commission in accordance with instructions provided by a representative of the Commission;

2.      Within thirty (30) days of entry of this Order, Defendants shall wire by electronic fund transfer the sum of One Hundred Twenty Five Thousand Dollars ($125,000), to the Commission, in accordance with instructions previously provided by a representative of the Commission;

3.      Within sixty (60) days of entry of this Order, Defendants shall wire by electronic fund transfer the sum of One Hundred Twenty Five Thousand Dollars ($125,000), to the Commission, in accordance with instructions previously provided by a representative of the Commission;

4.      Within ninety (90) days of entry of this Order, Defendants shall wire by electronic

Case: 1:15-cv-05781 Document #: 423-1 Filed: 06/24/19 Page 12 of 29 PageID #:16789

fund transfer the sum of One Hundred Twenty Five Thousand Dollars ($125,000), to the Commission, in accordance with instructions previously provided by a representative of the Commission;

5.      Within one hundred twenty (120) days of entry of this Order, Defendants shall wire by electronic fund transfer the sum of One Hundred Twenty Five Thousand Dollars ($125,000), to the Commission, in accordance with instructions previously provided by a representative of the Commission;

6.      Within one hundred fifty (150) days of entry of this Order, Defendants shall wire by electronic fund transfer the sum of One Hundred Twenty Five Thousand Dollars ($125,000), to the Commission, in accordance with instructions previously provided by a representative of the Commission;

7.      Within one hundred eighty (180) days of entry of this Order, Defendants shall wire by electronic fund transfer the sum of One Hundred Twenty Five Thousand Dollars ($125,000), to the Commission, in accordance with instructions previously provided by a representative of the Commission;

8.      Within two hundred ten (210) days of entry of this Order, Defendants shall wire by electronic fund transfer the sum of One Hundred Twenty Five Thousand Dollars ($125,000), to the Commission, in accordance with instructions previously provided by a representative of the Commission;

9.      Within two hundred forty (240) days of entry of this Order, Defendants shall wire by electronic fund transfer the sum of One Hundred Twenty Five Thousand Dollars ($125,000), to the Commission, in accordance with instructions previously provided by a representative of the

Commission;

10.     Within two hundred seventy (270) days of entry of this Order, Defendants shall wire by electronic fund transfer the sum of One Hundred Twenty Five Thousand Dollars ($125,000), to the Commission, in accordance with instructions previously provided by a representative of the Commission;

11.     Within three hundred (300) days of entry of this Order, Defendants shall wire by electronic fund transfer the sum of One Hundred Twenty Five Thousand Dollars ($125,000), to the Commission, in accordance with instructions previously provided by a representative of the Commission;

12.     Within three hundred thirty (330) days of entry of this Order, Defendants shall wire by electronic fund transfer the sum of One Hundred Twenty Five Thousand Dollars ($125,000), to the Commission, in accordance with instructions previously provided by a representative of the Commission;

13.     Within one (1) year of entry of this Order, Defendants shall wire by electronic fund transfer the sum of One Hundred Twenty Five Thousand Dollars ($125,000), to the Commission, in accordance with instructions previously provided by a representative of the Commission;

14.     Notwithstanding the foregoing, Defendants shall have the right to prepay at any time, and without penalty, the remaining balance, or any part thereof, due the Plaintiffs under this Order.  Any such prepayment made prior to an installment due date shall be credited as if made on the next installment due date, and Defendants shall be relieved of making any further payments on the installment due date for any prepayments to the extent of such prepayment. Nothing herein shall be construed to relieve Defendants of their obligation to make timely

payment for any installments as they become due which have not otherwise fully been paid in advance; and

15. Upon the completion of the payments described above in Subsections IX.G. 1-13 of this Order, the remainder of the judgment is suspended, subject to the Subsections below.

H. To secure the payment obligations under Subsection IX.G of this Order, Defendants grant the Commission liens on and security interests in certain property and proceeds thereof ("Collateral"), as set forth below. These interests are incorporated by reference as if fully set forth verbatim and grant a security interest in the following Collateral:

1. Defendant David Roman and his spouse Laura Roman hereby grant to the Commission, pursuant to a Deed of Trust, a lien on and security interest in the real property located at 14 Pine Orchard Lane, Killingworth, CT 06419. Defendant David Roman shall submit to the clerk's office for recording all security documents used to perfect the Commission's lien on the property within fourteen (14) days after entry of this Order, and shall deliver to the Commission copies of such officially recorded documents within seven (7) days after receipt of such documents;

2. Defendant David Roman and his spouse Laura Roman hereby grant to the Commission, pursuant to a Deed of Trust, a lien on and security interest in the real property located at 39 Harvestwood Lane, Higganum, CT 06441. Defendant David Roman shall submit to the clerk's office for recording all security documents used to perfect the Commission's lien on the property within fourteen (14) days after entry of this Order, and shall deliver to the Commission copies of such officially recorded documents within seven (7) days after receipt of such documents;

3.      Defendant David Roman and his spouse Laura Roman hereby grant to the Commission, pursuant to a Deed of Trust, a lien on and security interest in the real property located at 95 E. Shore Drive, East Haddam, CT 06419.  Defendant David Roman shall submit to the clerk's office for recording all security documents used to perfect the Commission's lien on the property within fourteen (14) days after entry of this Order, and shall deliver to the Commission copies of such officially recorded documents within seven (7) days after receipt of such documents;

4.      Defendant David Roman and his spouse Laura Roman hereby grant to the Commission, pursuant to a Deed of Trust, a lien on and security interest in the real property located at 10 Pine Orchard Lane, Killingworth, CT 06419.  Defendant David Roman shall submit to the clerk's office for recording all security documents used to perfect the Commission's lien on the property within fourteen (14) days after entry of this Order, and shall deliver to the Commission copies of such officially recorded documents within seven (7) days after receipt of such documents;

5.      Defendant David Roman and his spouse Laura Roman hereby grant to the Commission, pursuant to a Deed of Trust, a lien on and security interest in the real property located at 6 Pine Orchard Lane, Killingworth, CT 06419.  Defendant David Roman shall submit to the clerk's office for recording all security documents used to perfect the Commission's lien on the property within fourteen (14) days after entry of this Order, and shall deliver to the Commission copies of such officially recorded documents within seven (7) days after receipt of such documents; and

6.      Defendant David Roman and his spouse Laura Roman hereby grant to the

Commission, pursuant to a Deed of Trust, a lien on and security interest in the real property located at 302 Route 148, Killingworth, CT 06419. Defendant David Roman shall submit to the clerk's office for recording all security documents used to perfect the Commission's lien on the property within fourteen (14) days after entry of this Order, and shall deliver to the Commission copies of such officially recorded documents within seven (7) days after receipt of such documents.

I.      In the event that Defendants fail to make a required payment when due under Subsection IX.G of this Order, or the Commission is not allowed to retain any such payment, or if Defendant David Roman fails to comply with the terms of a Deed of Trust and such failure is not timely cured:

      1.      The entire judgment amount, less any amount previously paid, shall immediately become due and payable by Defendants. Interest computed at the rate prescribed under 28 U.S.C. § 1961, as amended, shall immediately begin to accrue on the unpaid balance. Time is of the essence for the payments specified in this Subsection; and

      2.      Defendants consent to the appointment of a receiver by the Court for the purpose of taking possession and control of and liquidating the Collateral, with the rights and powers, and privileges of an equity receiver. The costs and expenses of the receivership, including reasonable compensation for the receiver and personnel retained by the receiver, shall be paid solely from the proceeds of the Collateral.

J.      Plaintiffs' agreement to the suspension of part of the judgment is expressly premised upon the truthfulness, accuracy, and completeness of Defendants' sworn financial statements and related documents (collectively, "financial representations") submitted to the Commission,

namely:

1.      the Financial Statement of Individual Defendant David Roman signed on March 6, 2019, including the attachments;

2.      the Financial Statement of Individual Defendant Mitchel May signed on March 15, 2019, including the attachments;

3.      the Financial Statement of Individual Defendant Evan Sirlin signed on March 26, 2019, including the attachments;

4.      the Financial Statement of Corporate Defendant Safe Home Security, Inc. signed by David Roman, on March 6, 2019, including the attachments;

5.      the Financial Statement of Corporate Defendant MedGuard Alert, Inc. signed by David Roman, on March 6, 2019, including the attachments; and

6.      the Financial Statement of Corporate Defendant Lifewatch, Inc., signed by David Roman, on March 6, 2019, including the attachments.

K.      The suspension of the judgment will be lifted as to any Defendant if, upon motion by any Plaintiff, the Court finds that that Defendant failed to disclose any material asset, materially misstated the value of any asset, or made any other material misstatement or omission in the financial representations identified above.

L.      If the suspension of the judgment is lifted, the judgment becomes immediately due as to that Defendant in the amounts specified in Subsection A-F. above (which the parties stipulate only for purposes of this Section represents the consumer injury alleged in the Complaint), less any payment previously made pursuant to this Section, plus interest computed from the date of entry of this Order.

M.      Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

N.      The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of any Plaintiff, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

O.      The facts alleged in the Complaint establish all elements necessary to sustain an action by any Plaintiff pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

P.      Defendants acknowledge that their Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which Defendants previously submitted to Plaintiffs, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. §7701.

Q.      All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee on behalf of the both the Commission and the Florida Attorney General.   This fund shall be used for equitable relief, including, but not limited, to consumer redress, and any attendant expenses for the administration of any such equitable relief.   If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, Plaintiffs may, in their discretion, apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint.   Any money not used for such equitable relief shall be distributed among the

Case: 1:15-cv-05781 Document #: 424-1 Filed: 06/24/19 Page 19 of 29 PageID #:16776

Commission and the Florida Attorney General in the following manner:

    1.     The Florida Attorney General shall be reimbursed for attorney's fees and costs it incurred in this matter including, but not limited to, its costs of investigation and litigation, to be deposited to the Department of Legal Affairs Revolving Trust Fund.

    2.     All remaining joint funds shall be divided equally between the Commission and the Florida Attorney General, with half to be deposited to the U.S. Treasury as disgorgement, and half to be deposited to the Department of Legal Affairs Revolving Trust Fund for compliance and future monitoring.  Defendants have no right to challenge any actions Plaintiffs or their representatives may take pursuant to this Subsection.

## X.  NOTIFICATION TO CURRENT CUSTOMERS

IT IS FURTHER ORDERED that:

A.    Within thirty (30) days of entry of this Order, Defendants must notify all customers with a PERS Account, by first-class mail, postage paid and return receipt requested, or by courier service with signature proof of delivery, using the notification letter (attached as Appendix B), with no other document or enclosure.  The notification letter must be printed on the letterhead, including the toll-free customer service telephone number, of the Corporate Defendant or other entity which most recently charged the customer on behalf of Defendants.

B.    For any customer who requests cancellation of their PERS Account, Defendants shall, within fifteen (15) days of Defendants receiving the request, cancel the account and refund all payments made by the customer on or after the date of entry of this Order.  Defendants shall issue refunds to the source of the initial charge (such as a credit or debit card) or, if that option is not available, issue a check to the customer by first-class mail. Within thirty (30) days of

receiving the request for cancellation, Defendants shall provide documentation to Plaintiffs

sufficient to show the customer name, contact information, the amount of all payments made by

the customer on or after the entry of this Order, and the amount refunded for every customer who

requests cancellation of their PERS Account.

## XI. CUSTOMER INFORMATION

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees,

and attorneys, and all other persons in active concert or participation with any of them, who

receive actual notice of this Order, are permanently restrained and enjoined from directly or

indirectly:

A.      failing to provide sufficient customer information to enable the Commission to efficiently

administer consumer redress.   If a representative of the Commission requests in writing any

information related to redress, Defendants must provide it, in the form prescribed by the

Commission, within 14 days.

B.      disclosing, using, or benefitting from customer information, including the name, address,

telephone number, email address, social security number, other identifying information, or any

data that enables access to a customer's account (including a credit card, bank account, or other

financial account), that any Defendant obtained prior to entry of this Order in connection with the

sale of medical alert devices or services; except as necessary to continue to provide services and

collect payment from customers who do not request cancellation of their PERS Account after

receiving the notification letter described in Section X, titled "Notification to Current Customers";

C.      failing to destroy such customer information in all forms in their possession, custody, or

control within thirty (30) days after receipt of written direction to do so from a representative of

Page 20 of 27

the Commission.

Provided, however, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

## XII. ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Defendants obtain acknowledgments of receipt of this Order:

A.      Each Defendant, within seven (7) days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.      For five (5) years after entry of this Order, the Individual Defendants, for any business that such Defendant, individually or collectively with any other Defendants, is the majority owner or controls directly or indirectly, and Corporate Defendants each must deliver a copy of this Order to:  (1) all principals, officers, directors, and LLC managers and members; (2) all employees having managerial responsibilities for conduct related to the subject matter of the Order, and all agents and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section XII, titled "Compliance Reporting."   Delivery must occur within 7 days of entry of this Order for current personnel.   For all others, delivery must occur before they assume their responsibilities.

C.      From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## XIII. COMPLIANCE REPORTING

Page 21 of 27

IT IS FURTHER ORDERED that Defendants make timely submissions to the

Commission:

A.    One year after entry of this Order, each Defendant must submit a compliance report,

sworn under penalty of perjury:

1.    Each Defendant must:   (a) identify the primary physical, postal, and email address and

telephone number, as designated points of contact, which representatives of the Commission may

use to communicate with Defendant; (b) identify all of that Defendant's businesses by all of their

names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the

activities of each business, including the goods and services offered, the means of advertising,

marketing, and sales, and the involvement of any other Defendant (which Defendant must

describe if they know or should know due to their own involvement); (d) describe in detail

whether and how that Defendant is in compliance with each Section of this Order; and (e) provide

a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously

submitted to the Commission.

2.    Additionally, the Individual Defendants each must:   (a) identify all telephone numbers

and all physical, postal, email and Internet addresses, including all residences; (b) identify all

business activities, including any business for which such Defendant performs services whether as

an employee or otherwise and any entity in which such Defendant has any ownership interest; and

(c) describe in detail such Defendant's involvement in each such business, including title, role,

responsibilities, participation, authority, control, and any ownership.

B.    For ten (10) years after entry of this Order, each Defendant must submit a compliance

notice, sworn under penalty of perjury, within fourteen (14) days of any change in the following:

1.    Each Defendant must report any change in:  (a) any designated point of contact; or (b) the structure of any Corporate Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.    Additionally, the Individual Defendants each must report any change in:  (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.    Each Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within fourteen (14) days of its filing.

D.    Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding:  "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.   Executed on:  _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.    Unless otherwise directed by a Plaintiff representative in writing, all submissions to Plaintiffs pursuant to this Order must be emailed to DEbrief@ftc.gov and oag.cp@myfloridalegal.com, or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission,

600 Pennsylvania Avenue NW, Washington, DC 20580 and Office of the Attorney General,

Consumer Protection Division, c/o Office Manager or Senior Paralegal, 135 W. Central Blvd.,

Suite 1000, Orlando, Florida 32801.   The subject line must begin: *FTC, et al., v. Lifewatch, Inc.,*

*et al.*, Case No. X150049.

## XIV. RECORDKEEPING

IT IS FURTHER ORDERED that Defendants must create certain records for ten (10)

years after entry of the Order, and retain each such record for five (5) years.   Specifically, each

Defendant for any business that such Defendant, individually or collectively with any other

Defendants, is a majority owner or controls directly or indirectly, must create and retain the

following records:

A.      Accounting records showing the revenues from all goods or services sold;

B.      Personnel records showing, for each person providing services, whether as an employee or

otherwise, that person's: name; addresses; telephone numbers; job title or position; dates of

service; and (if applicable) the reason for termination;

C.      Records of all consumer complaints and refund requests, whether received directly or

indirectly, such as through a third party, and any response;

D.      All records necessary to demonstrate full compliance with each provision of this Order,

including all submissions to the Commission; and

E.      A copy of each unique advertisement or other marketing material.

## XV. COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendants' compliance

with this Order, including the financial representations upon which part of the judgment was

suspended, and any failure to transfer any assets as required by this Order:

A.      Within 14 days of receipt of a written request from a representative of any Plaintiff, each Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.   Plaintiffs are also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.      For matters concerning this Order, Plaintiffs are authorized to communicate directly with each Defendant.   Defendants must permit representatives of any Plaintiff to interview any employee or other person affiliated with any Defendant who has agreed to such an interview. The person interviewed may have counsel present.

C.      Plaintiffs may use all other lawful means, including posing, through their representatives as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice.   Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.      Upon written request from a representative of Plaintiffs, any consumer reporting agency must furnish consumer reports concerning the Individual Defendants, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

### XVI. RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

Case 2:24-cv-12940-LVP-KGA   ECF No. 1, PageID.60   Filed 11/05/24   Page 60 of 67

Case: 1:15-cv-05781 Document #: 424 Filed: 07/01/19 Page 26 of 29 PageID #:16788
Case: 1:15-cv-05781 Document #: 422-1 Filed: 06/24/19 Page 26 of 29 PageID #:16783

SO ORDERED this __1st__ day of ____July____, 2019.

UNITED STATES DISTRICT JUDGE

SO STIPULATED AND AGREED:

Samantha Gordon
Federal Trade Commission, Midwest Region
230 South Dearborn St., Room 3030
Chicago, Illinois 60604
Telephone: 312.960.5634
Facsimile: 312.960.5600

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

Dated:  __6/24/19__

ASHLEY MOODY
Attorney General
State of Florida

Patricia A. Conners
Deputy Attorney General
Florida Bar Number #0361275
Office of the Attorney General
Department of Legal Affairs
107 W. Gaines Street
Tallahassee, FL 32399
Telephone: 580.245.0178

__6/20/19__

Jason Sultzer
Joseph Lipari
The Sultzer Law Group
14 Wall Street, 20th Floor
New York, New York 10005
Telephone: 212.618.1938
Facsimile: 888.749.7747

Attorneys for Defendants EVAN SIRLIN,
MITCHEL MAY, and LIFEWATCH, INC.

Evan Sirlin, individually and as an officer or
manager of Lifewatch, Inc..

Dated: __4/12/19__

Mitchel May, individually and as an officer or
Manager of Lifewatch, Inc.

Dated: __5/14/19__

Page 26 of 29

Case: 1:15-cv-05781 Document #: 424 Filed: 07/01/19 Page 27 of 29 PageID #:16788
Case: 1:15-cv-05781 Document #: 422-1 Filed: 06/24/19 Page 27 of 29 PageID #:16784

Donna C. Valin
Assistant Chief Assistant Attorney General
Florida Bar Number #96687

Paul E. Courtright
Assistant Attorney General
Florida Bar Number #0507741
Office of the Attorney General
Consumer Protection Division
135 W. Central Boulevard, Suite 1000
Orlando, Florida 32801
Telephone:   407.316.4840
Facsimile:   407.245.0365

Attorneys for Plaintiffs
STATE OF FLORIDA
OFFICE OF THE ATTORNEY GENERAL

Dated: 6|21|2019

Brian W. Bell
Joelle M. Shabat
Swanson, Martin & Bell, LLP
330 North Wabash Avenue, Suite 3300
Chicago, Illinois 60611
Telephone: 312.321.9100
Facsimile: 312.321.0990

Attorneys for Defendants
DAVID ROMAN, SAFE HOME
SECURITY, INC., and MEDGUARD
ALERT, INC.

Dated: 4-17-19

David Roman, individually and as an officer
or manager of Lifewatch, Inc., Safe Home
Security, Inc., and MedGuard Alert, Inc.

Dated: 4|17|2019

Page 27 of 27

## APPENDIX B

[Insert date]

Dear [Customer's name],

We're writing about your medical alert service with [brand name consumer will recognize]. The Federal Trade Commission (FTC) and Florida Attorney General (AG) have sued us for making false claims about our service. Companies working for us also made illegal robocalls and illegally called people on the National Do Not Call Registry.

According to the FTC and AG, we falsely told people that:

- a friend, family member, or health care provider had referred them to us.

- our medical alert system was endorsed by groups like the American Heart Association, American Diabetes Association, National Institute on Aging, AARP, and the Red Cross.

- customers wouldn't be charged the first monitoring fee until they activated the medical alert system.

- customers could cancel the monitoring service at any time without paying any more money.

We have agreed not to make untruthful claims in the future. In addition, some related companies and individuals have been banned from telemarketing or robocalling.

To cancel your medical alert system service with us, call [toll-free number]. If you cancel, within 15 days we will refund any payments you made after [date of the Order].

Case 2:24-cv-12940-LVP-KGA ECF No. 1, PageID.63 Filed 11/05/24 Page 63 of 67

Case: 1:15-cv-05781 Document #: 424 Filed: 07/01/19 Page 29 of 29 PageID #:16788
Case: 1:15-cv-05781 Document #: 422-1 Filed: 06/24/19 Page 29 of 29 PageID #:16786

If you have questions, please call us at [toll-free number].

Sincerely yours,

[name of person]
[company name]

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

MARK W. DOBRONSKI

## DEFENDANTS

MEDGUARD ALERT, INC.
and DAVID GLEN ROMAN

**(b)** County of Residence of First Listed Plaintiff    Orange, FL
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Middlesex, CT
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

PRO SE

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1   U.S. Government Plaintiff
- [x] 3   Federal Question
  *(U.S. Government Not a Party)*
- [ ] 2   U.S. Government Defendant
- [ ] 4   Diversity
  *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal | [ ] 376 Qui Tam (31 USC |
| [ ] 130 Miller Act | [ ] 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| [ ] 140 Negotiable Instrument | Liability | [ ] 367 Health Care | | | [ ] 400 State Reapportionment |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' | Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted | Liability | [ ] 368 Asbestos Personal | | [ ] 835 Patent - Abbreviated | [ ] 460 Deportation |
| Student Loans | [ ] 340 Marine | Injury Product | | New Drug Application | [ ] 470 Racketeer Influenced and |
| (Excludes Veterans) | [ ] 345 Marine Product | Liability | | [ ] 840 Trademark | Corrupt Organizations |
| [ ] 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 880 Defend Trade Secrets | [ ] 480 Consumer Credit |
| of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards | Act of 2016 | (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle | [ ] 371 Truth in Lending | Act | | [x] 485 Telephone Consumer |
| [ ] 190 Other Contract | Product Liability | [ ] 380 Other Personal | [ ] 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal | Property Damage | Relations | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | Injury | [ ] 385 Property Damage | [ ] 740 Railway Labor Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ |
| | [ ] 362 Personal Injury - | Product Liability | [ ] 751 Family and Medical | [ ] 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | Leave Act | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement | | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | Income Security Act | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate | | [ ] 870 Taxes (U.S. Plaintiff | Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ | Sentence | | or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party | [ ] 899 Administrative Procedure |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities - | [ ] 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment | **Other:** | [ ] 462 Naturalization Application | | Agency Decision |
| 485 | [ ] 446 Amer. w/Disabilities - | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration | | [ ] 950 Constitutionality of |
| | Other | [ ] 550 Civil Rights | Actions | | State Statutes |
| | [ ] 448 Education | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
47 U.S.C. 227

Brief description of cause:
Illegal telemarketing calls

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 327,500.00

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [x] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE
October 31, 2024

SIGNATURE OF ATTORNEY OF RECORD
*Mark W. Dobronski*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## PURSUANT TO LOCAL RULE 83.11

1.        Is this a case that has been previously dismissed?          ☐ Yes
                                                                      ☑ No
If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


2.        Other than stated above, are there any pending or previously
          discontinued or dismissed companion cases in this or any other          ☐ Yes
          court, including state court? (Companion cases are matters in which      ☑ No
          it appears substantially similar evidence will be offered or the same
          or related parties are present and the cases arise out of the same
          transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


Notes :

**MARK W. DOBRONSKI**
POST OFFICE BOX 99
DEXTER, MICHIGAN 48130-0099
(734) 641-2300
markdobronski@yahoo.com

October 31, 2024

United States District Court
Attn: Clerk's Office
231 West Lafayette Boulevard, 5th Floor
Detroit, Michigan 48226-2700

      Re:    NEW FILING
             Mark W. Dobronski v. Medguard Alert, Inc., *et al.*

Dear Sir or Madam:

    Enclosed please find:

- Check number 1030, in the amount of $405.00, representing the filing fee required for the above-case;

- Civil Cover Sheet

- Two (2) Summonses; and,

- Complaint

    Please file the Complaint in your usual course and return the signed Summonses to the attention of the undersigned.

    Thank you for your attention to this matter.

                     Very truly yours,

                     Mark W. Dobronski

MWD/hp



*U.S. MARSHAL*

**FROM:**

MARK W DOBRONSKI
PO BOX 99
DEXTER, MI 48130-0099

**TO:**

UNITED STATES DISTRICT COURT
ATTN: CLERK'S OFFICE
231 W LAFAYETTE BLVD FL 5
DETROIT, MI 48226-2700

*Retail*

**UNITED STATES POSTAL SERVICE**

**P** PRIORITY MAIL®

US POSTAGE PAID
**$10.45**

Origin: 48130
10/31/24
2828100130-09

0 Lb 14.90 Oz

RDC 03

C052

EXPECTED DELIVERY DAY: 11/02/24

SHIP
TO:
231 W LAFAYETTE BLVD
DETROIT, MI 48226-2700

USPS TRACKING® #

9505 5123 0462 4306 3376 50

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

**FLAT RATE ENVE**
ONE RATE ■ ANY WEIGHT

**TRACKED ■ INSUF**

■ Expected delivery date specified for
■ Domestic shipments include $100 of
■ USPS Tracking® service included for
■ Limited international insurance.**
■ When used internationally, a custom

*Insurance does not cover certain items. For de
Domestic Mail Manual at http://pe.usps.com.
** See International Mail Manual at http://pe.usp

EP14F October 2023
OD: 12 1/2 x 9 1/2

The packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; October 2023; All rights reserved.

This package is made from post-consumer waste. Please recycle - again.

PS00001000014